**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Honorable Howard R. Tallman**

| | |
|---|---|
| In re: ) | |
| ) | |
| **JOHN M. MILSTEIN,** ) | Case No. 13-17286 HRT |
| ) | |
| Debtor. ) | Chapter 13 |
| ) | |

### ORDER ON PLAN CONFIRMATION AND RELATED MOTIONS

This case comes before the Court on Debtor's *Objection to the Claim of Plaza De Monaco Condominium Association* (docket #45); Debtor's *Amended Chapter 13 Plan Including Valuation of Collateral and Classification of Claims* (docket #59); and the *Motion for Dismissal Pursuant to 11 U.S.C. 707(a) and Rule 9011* (docket #65) filed by Plaza De Monaco Towers Condominium Association, Inc.

### I. BACKGROUND

The Debtor is seriously delinquent in payment of his assessment obligations to the Plaza De Monaco Towers Condominium Association, Inc. (the "Association"). The Association filed a proof of claim in the amount of $26,236.15 on account of the unpaid assessments. According to the testimony of the Association's treasurer, the Debtor became delinquent in November, 2008, and has remained so since that time. According to the payment history attached to the Association's proof of claim, the Debtor continued making assessment payments until approximately mid-2009 when he ceased making payments altogether.

The Debtor holds the Association responsible for unrepaired water damage to his condominium unit that occurred in May of 2012. He has filed suit against the Association for damages.

The Debtor's chapter 13 plan (the "Plan") proposes payments to the Chapter 13 Trustee of $50.00 per month for 4 months; $233.00 per month for 55 months; and a single final payment of $29,393.00. The proposed final payment would be funded from his anticipated recovery resulting from the law suit he has filed against the Association. Of the $42,408.00 scheduled to be paid to the Chapter 13 Trustee, the Debtor's Plan Analysis shows an estimated $760.00 should be available for payment of general unsecured creditors.

Prior to the Debtor's filing of his bankruptcy case, the Association brought suit to foreclose its lien for unpaid assessments. In that action, the Debtor, represented by counsel, agreed to confess judgment. The Association duly scheduled a foreclosure sale. The Debtor filed this bankruptcy case prior to the scheduled sale date. The Association's foreclosure sale is stayed by the automatic stay and the Debtor remains in possession of his condominium unit.

ORDER ON PLAN CONFIRMATION AND RELATED MOTIONS
Case No. 13-17286 HRT

## II.  DISCUSSION

The Court combined its hearing on confirmation of the Debtor's Plan with a hearing on the Debtor's objection to the Association's claim ("Claim Objection") and the Association's motion to dismiss the Debtor's chapter 13 case ("Motion to Dismiss").

A.  Claim Objection

The Debtor objects to the Association's claim on the basis that he owes nothing to the Association on account of his damages claim against it or that the Association claim is subject to reduction through setoff.

The Court will deny the Debtor's Claim Objection. The Association filed its Claim #5-1 on June 4, 2013. It claims a prepetition secured debt of $26,236.15 based upon the Debtor's obligation to pay assessments for the maintenance of the common elements of the condominium project where the Debtor is a resident and on the Debtor's default in making those payments. The Association claims the debt is secured under COLO. REV. STAT. § 38-33.3-316.

With its proof of claim, the Association provided an accounting of the assessments, fees, interest and legal costs that were due and owing on the date Debtor filed his bankruptcy petition. At hearing, the Association provided its Declaration of Covenants, Conditions and Restrictions and the amendments thereto.

The amount of the Association's claim is somewhat of a moving target and the parties did not address that issue with much precision. On December 4, 2012, the Debtor signed a Confession of Judgment for the amount of $22,900.00. The confession recites that it represents the amount of "unpaid assessments, interest, late charges, attorney's fees and costs through December 4, 2012." The Confession of Judgment was signed by the Association's attorney and by the Debtor's attorney. That represents an agreement between the Association and the Debtor that fixes the amount of the Debtor's obligation to the Association at $22,900.00 as of December 4, 2012.

To that figure, the Court will add the additional debt that accrued between that date and the petition date. For those figures, the Court has referred to the Association's Exhibit #4. The Court has taken into account the assessments, interest, fees to the Association and legal fees accruing from the date of the parties' agreement to the petition date. The Court also deducted two payments of $311.00 each that appear on that statement. By the Court's calculation, the net additional debt accrued during that period amounts to $2,347.38 and results in a total claim amount of $25,247.38.

There is one legal invoice appearing in the Association's Exhibit #4 that the Court did not include in the approved claim amount. The December 28, 2012, invoice shows that it

ORDER ON PLAN CONFIRMATION AND RELATED MOTIONS
Case No. 13-17286 HRT

included fees incurred between "11/28 - 12/07." Those dates straddle the agreement date of December 4, 2012. However, from the accompanying description, it appears that the majority of those fees relate to trial preparation occurring prior to December 4, 2012. The Association provided the Court with no evidence that would allow a more precise determination, therefore, the full amount has been excluded.

Also, the Court has reviewed the Association's Covenants and is familiar with the Colorado Common Interest Ownership Act, COLO. REV. STAT. § 38-33.3-101 et seq. The Court finds that, under COLO. REV. STAT. § 38-33.3-316(1), the Association has a statutory lien on the Debtor's condominium unit to secure the Debtor's obligation. Therefore, the Court finds that the Association has an allowed secured claim of $25,247.38 in this bankruptcy case.

There seems to be no dispute that the Association is responsible for the repair of water damage to the Debtor's condominium unit. The determination of that amount will be done in the state court and may represent a potential offset that may be applied to the Association's allowed claim.

B. Debtor's Plan

In addition to the other confirmation elements under 11 U.S.C. § 1325(a), the Court must find, under § 1325(a)(6) that "the debtor will be able to make all payments under the plan and to comply with the plan." Based upon the evidence the Court cannot make that finding.

The Court noted above that the Debtor's Plan proposes payments to the Chapter 13 Trustee of $50.00 per month for 4 months and $233.00 per month for 55 months. A final payment – at the end of the five year Plan – of $29,393.00 is proposed. At the time of the hearing, the evidence was that the Debtor was current with post-petition assessment payments to the Association. Also, the evidence was that he was current with his payments of $233.00 monthly to the Chapter 13 Trustee. Although the Debtor's budget suggests otherwise, the Court will assume that the $233.00 monthly payment is feasible. What is not feasible, absent pure speculation concerning the outcome of the Debtor's pending litigation against the Association, is the final payment of $29,393.00.

Numerous courts have found that debtors who propose to fund their chapter 13 plans from a hoped for favorable litigation outcome cannot satisfy the feasibility requirement of § 1325(a)(6). *See, e.g., In re Jensen*, 425 B.R. 105, 110 (Bankr. S.D. N.Y. 2010); *In re Ewald*, 298 B.R. 76, 82 (Bankr. E.D. Va. 2002); *In re Reines*, 30 B.R. 555, 562 (Bankr. D. N.J. 1983). Plans that propose to make a late or end-of-plan balloon payment can rarely meet the Code's feasibility requirement for plan confirmation. *See, e.g., In re Fantasia*, 211 B.R. 420 (B.A.P. 1st Cir. 1997). The cases that propose to fund such a one-time payment from a litigation recovery are simply a class of those balloon payment cases where the speculative nature of the final payment is clear on the face of such a plan. Regardless of how much the Debtor believes in the

ORDER ON PLAN CONFIRMATION AND RELATED MOTIONS
Case No. 13-17286 HRT

merits of his position, he has not met his burden to show that his Plan is feasible under § 1325(a)(6). For that reason, Plan confirmation will be denied.

C. Motion to Dismiss

The Association seeks dismissal of the Debtor's bankruptcy case. It claims that the Debtor is improperly using the bankruptcy court to settle a two-party dispute and that the Debtor's bad faith conduct requires dismissal of his case for "cause" under 11 U.S.C. § 1307(c).[1]

> [O]n request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . .

11 U.S.C. § 1307(c).

Section 1307(c) lists several examples of cause justifying dismissal under that subsection. Although good faith is not a specifically enumerated basis for a finding of cause under § 1307(c), the Bankruptcy Appellate Panel for the Tenth Circuit has concluded that

> good faith inquiries have traditionally been encompassed by § 1307(c). While lack of good faith is not expressly mentioned, a lamentable waste of judicial resources would result from allowing Chapter 13 cases filed in bad faith to progress to confirmation . . . .

*In re Armstrong*, 303 B.R. 213, 221 (B.A.P. 10th Cir. 2004). The United States Supreme Court has said

> [a]n issue that has arisen with disturbing frequency is whether a debtor who acts in bad faith prior to, or in the course of, filing a Chapter 13 petition by, for example, fraudulently concealing significant assets, thereby forfeits his right to obtain Chapter 13 relief. . . . [D]espite the absence of any statutory provision specifically addressing the issue, the federal courts are virtually unanimous that prepetition bad-faith conduct may cause a forfeiture of any right to proceed with a Chapter 13 case.

---

[1] The Association's motion cites to 11 U.S.C. § 707(a) as authority for dismissal of the Debtor's case. However, as § 707 is inapplicable to a case under chapter 13, the Court will refer instead to 11 U.S.C. § 1307 – the Code section that authorizes dismissal of a chapter 13 case for cause upon the motion of a party in interest.

ORDER ON PLAN CONFIRMATION AND RELATED MOTIONS
Case No. 13-17286 HRT

*Marrama v. Citizens Bank*, 549 U.S. 365, 367 (2007). The Debtor's prepetition bad faith conduct provides grounds for dismissal or conversion under § 1307(c).

The Debtor's focus on the water damage issue is regrettable. It is a distraction. The Debtor has failed, over a number of years, to pay the Association's maintenance assessments on his condominium unit. He became delinquent in 2008 and appears to have stopped paying altogether in 2009. That is the source of the problem that has led him into conflict with the Association. The water damage issue arose at least three years after the delinquency and is wholly unrelated.

The Debtor's prepetition bad faith takes a few forms. First of all, he confessed judgment in the Association's foreclosure action. When he did so, he benefitted from the advise of counsel. Thereafter, the reasonable expectation of the parties was that the foreclosure sale would go forward and the Association could finally recoup its delinquent assessments – after a four year delinquency. The Debtor repudiated that agreement and frustrated those reasonable expectations by staying the foreclosure through the filing of a chapter 13 petition. The Debtor entered into an agreement to end the state court foreclosure litigation and now seeks to avoid the consequences of that agreement in this forum. To compound the bad faith, the Debtor proposed a Plan that was a non-starter because it was based on a speculative litigation recovery. In the end, the Debtor's chapter 13 Plan represents nothing more than an effort to stay in possession of his condominium unit while he litigates his water damage claim without a feasible alternative to pay the Association's claim.

Another form of bad faith consists of the Debtor's actions with respect to his condominium unit, which should have represented a valuable asset. A debtor's filing of a bankruptcy case on the eve of a foreclosure sale is hardly remarkable. It is an everyday occurrence. An individual reorganization under chapter 13, when feasible, can be an effective tool to preserve value and equity in an asset. Here, whatever value and equity the Debtor had in his condominium unit has been squandered through the Debtor's own actions. The Court doubts the Debtor's stated value of $0.00 reflected in his *Amended Schedule A – Real Property* (docket #10, page 10 of 27). Nonetheless, the evidence persuades the Court that the value of the Debtor's condominium unit has been negatively affected by his actions.

The evidence was clear that, in 2012, a water main break caused water to enter the Debtor's unit and caused damage. The evidence also was that this is not an unusual occurrence because of the age of the Association's buildings. In the normal case, unit owners allow the Association access to their units to facilitate the repair of the water lines and so the Association can repair the damage to individual units. The Debtor did not allow that access. He testified that he does not use water service in part of the unit and that holes exist in the walls. The conclusion the Court draws from the evidence is that, by denying the Association the normal and routine access necessary to allow the Association to repair the damage to his unit, the Debtor has allowed the value of his unit to substantially deteriorate and has made a normal sale of his unit

ORDER ON PLAN CONFIRMATION AND RELATED MOTIONS
Case No. 13-17286 HRT

extremely problematic. Thus, by his own prepetition actions, the Debtor has foreclosed the possibility of using his chapter 13 bankruptcy filing to preserve value in his condominium unit.

The Association believes that the Debtor's valuation of his Bentley automobile is an additional indication of bad faith. Here the Court disagrees. With respect to the Bentley, the narrow issue before the Court is whether the Debtor knowingly misrepresented the value of his Bentley in papers filed in this Court. The Court concludes that he did not. The opinions expressed to the Court by expert witnesses vary widely. The Court accepts the testimony of the Association's expert that a fair market value for the vehicle would be approximately $8,000.00 – substantially higher than the estimate of $1,000.00 the Debtor made when he filed his schedules.

The Bentley is an unusual vehicle. The market for such a vehicle is extremely limited. The Debtor testified that he attempted to market the car at a price consistent with the $15,000.00 to $25,000.00 figure that appears in the proposal he made to the Association's board and which was admitted as the Association's Exhibit #6. The Debtor received no offers at any price. The Court accepts the Debtor's testimony that those value figures were derived by the Association's foreclosure attorneys from an NADA value guide. The Court heard no testimony that persuades it that either the Debtor or the Association's foreclosure counsel possessed any particularized knowledge of the market for such a vehicle. Given the lack of any evidence that the Debtor has expertise in rare vehicle valuation, and given the response the Debtor received to his marketing efforts, the Court cannot find that the Debtor's scheduled value was done with an intent to mislead the Court or his creditors.

Finally, the Association contends that the Debtor's bankruptcy case represents a two party dispute. The Court agrees that the Debtor's filing of his bankruptcy petition was solely an effort to stay the Association from its foreclosure efforts while he litigates his unrelated water damage claim. In that respect, the Debtor's chapter 13 case was filed in bad faith.

At the same time, the Debtor's overall financial condition cannot be characterized as a two-party dispute. In addition to the claim filed by the Association, nine other creditors have filed proofs of claim in this case. Claims for $37,992.87 of unsecured revolving credit were filed; secured tax claims of $3,477.86 were filed; and $9,509.55 of general unsecured tax claims were filed. The Association is certainly the Debtor's dominant creditor but his other debts are not insubstantial. The Court finds bad faith that justifies either dismissal or conversion of the Debtor's case under 11 U.S.C. § 1307(c). But the presence of substantial debt in addition to the Debtor's secured debt to the Association argues in favor of allowing the Debtor an opportunity to voluntarily convert his case to a case under chapter 7 and seek a discharge of his other debts.

ORDER ON PLAN CONFIRMATION AND RELATED MOTIONS
Case No. 13-17286 HRT

## III.  CONCLUSION

The Court heard substantial testimony about water damage to the Debtor's condominium unit and the value of an old and disused Bentley automobile.  This case is about none of those things.  What it is about is the Debtor's long-standing inability to pay normal maintenance assessments to the Association.  The Court cannot help but lament the Debtor's diminished financial condition but it cannot let it's sympathy for the Debtor's circumstances lead it into complicity with the Debtor in his continued abuse of the Bankruptcy Code.  Under his proposed Plan, unless he succeeds in obtaining a substantial litigation award against the Association, the Debtor has no feasible means to pay his prepetition delinquency to the Association.  The only apparent function of the Debtor's chapter 13 case is to obtain a stay of the Association's foreclosure pending the outcome of the unrelated water damage litigation.  That is an improper use of the Bankruptcy Code and, therefore, it is

**ORDERED** that confirmation of the Debtor's Plan (docket #59) is DENIED.  It is further

**ORDERED** that Debtor's *Objection to the Claim of Plaza De Monaco Condominium Association* (docket #45) is DENIED.  The Association's Claim #5-1 is hereby ALLOWED as a secured claim in the amount of $25,247.38, subject to setoff by any damage award the Debtor may receive through the ongoing state court litigation over water damage to the Debtor's condominium unit.  It is further

**ORDERED** that the *Motion for Dismissal Pursuant to 11 U.S.C. 707(a) and Rule 9011* (docket #65) filed by Plaza De Monaco Towers Condominium Association, Inc., is GRANTED IN PART AND DENIED IN PART.  The Debtor's bad faith in filing his chapter 13 petition forecloses the option of allowing the Debtor to continue this case under chapter 13 but the Court will not immediately dismiss the Debtor's case.  He will have an opportunity to voluntarily convert this case to a case under chapter 7.  It is further

**ORDERED** that the Debtor shall be permitted 21 days from the date of this Order to file a notice of conversion of his case to a case under chapter 7.  Thereafter, if not converted, this case will be dismissed without further proceedings.

Dated this ___15th___ day of July, 2014.

BY THE COURT:

*/s/ Howard Tallman*
Howard R. Tallman, Judge
United States Bankruptcy Court